IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CONSOLIDATED INFRASTRUCTURE GROUP, INC., ERIC MOODY, ZACK MANTEY, BRIAN HANNA, TRAVIS DANIELS, BRENT COFFIELD, AND TOM ORTH, | Case No. 8:16-CV-00472 |
| Plaintiffs, | |
| vs. | |
| USIC, LLC, USIC LOCATING SERVICES, LLC, LOCATE HOLDINGS, INC., | |
| Defendants. | |

## DECLARATION OF ERIC MOODY

The Undersigned, Eric Moody, hereby certifies, under penalty of perjury, that the following statements are true and accurate based upon my own personal knowledge, information and belief:

1.      I am currently employed with Consolidated Infrastructure Group, Inc. ("CIG").

2.      I currently reside in, and at all times relevant to the Complaint, resided in the state of Nebraska.

3.      I have never worked for USIC, LLC; USIC Locating Services, LLC; or Locate Holdings, Inc. (collectively, "USIC") in the state of Indiana.

4.      During my employment with USIC, I was assigned to and worked out of USIC's offices in Omaha, Nebraska.

5.      During my employment with USIC, I signed a Protective Covenants Agreement in Omaha, Nebraska.

EXHIBIT 8

5.      During my employment with USIC, I was assigned to and worked out of USIC's offices in Omaha, Nebraska.

6.      I have never worked performed work for USIC, LLC; USIC Locating Services, LLC; or Locate Holdings, Inc. (collectively, "USIC") in the state of Indiana.

7.      During my employment with USIC, I signed a Protective Covenants Agreement with USIC, LLC, in Omaha, Nebraska, a true and correct copy of which is attached hereto as Exhibit A.

UNDER PENALTY OF PERJURY, the Undersigned hereby declares the foregoing statements to be true and accurate on this ___4th___ day of January, 2017.

Eric Moody

4823-1750-4320.1

## PROTECTIVE COVENANTS AGREEMENT[1]

     Through this Protective Covenants Agreement ("Agreement"), United States Infrastructure Corporation ("Company") and I, the undersigned (also referred to as "Employee"), agree that the following shall apply as a condition of my employment with the Company:

1.    Special Relationship of Trust. I understand that I am being placed in a special position of trust and confidence. Company agrees to provide me with one or more of the following as a result of this Agreement and my position with the Company: items of Confidential Information (defined below) related to my position; authorization to communicate and develop goodwill with Company customers; and/or, specialized training related to Company's business. I agree to use these advantages of employment to further the business of the Company and not to knowingly cause harm to the business of the Company.

2.    Duty of Loyalty. I will dedicate my full working time and efforts to the business of the Company and will not undertake or prepare to undertake any conflicting business activities while employed with the Company. The duties and obligations under this Agreement shall supplement and not replace or diminish the common law duties I would ordinary have to the Company as my employer.

3.    Reasonable Restrictions. The Company's agreement to provide me with some of its Confidential Information, authorization to communicate with and develop goodwill with Company customers, and/or to receive specialized training related to Company's business, gives rise to an interest in reasonable restrictions that this Agreement is designed to enforce. I agree that the restrictions in this Agreement are reasonable and necessary, and do not create an undue burden on me or the public.

4.    Confidentiality Obligation. During my employment and for so long thereafter as the information is maintained as confidential by the Company, I will not engage in any use or disclosure of Confidential Information that is not authorized by the Company and undertaken for the benefit of the Company. **"Confidential Information"** means information or a compilation of information, in any form (tangible or intangible), related to the Company's business that the Company has not made public or authorized for public disclosure and that is not generally known to the public through proper means. Confidential Information will not lose its protected status under this Agreement if it becomes generally known to the public or to other persons through improper means such as the unauthorized use or disclosure of the information by me or another person. Confidential Information includes, but is not limited to: Company's business plans and analysis, customer and prospective customer lists, identities of customer contacts, customer preferences, marketing plans and strategies, research and development data, buying practices, internal business methods, techniques, technical data, know-how, innovations, computer programs, un-patented inventions, and trade secrets; and information about the business affairs of third parties (including, but not limited to, customers and suppliers) that such third parties provide to Company in confidence. Confidential Information will include trade secrets, but an item of Confidential Information need not qualify as a trade secret to be protected

---

[1] Employees in Louisiana, Nebraska and Wisconsin are directed to Exhibit A for important limitations on the scope of the protective covenants within this Agreement.

**PROTECTIVE COVENANTS AGREEMENT - PAGE 1**

A

by this Agreement. Company's confidential exchange of information with a third party for business purposes will not remove it from protection under this Agreement. I acknowledge that items of Confidential Information are Company's valuable assets and have economic value, actual or potential, because they are not generally known by the public or others who could use them to their own economic benefit and/or to the competitive disadvantage of the Company, and thus, should be treated as Company's trade secrets. The restrictions on use or disclosure of Confidential Information will only apply during employment and for two (2) years after the end of Employee's employment where information that does not qualify as a trade secret is concerned; however, the restrictions will continue to apply to trade secret information for as long as the information at issue remains qualified as a trade secret. Nothing herein shall be construed to reduce or diminish the applicability of trade secret protections, statutory or common law, that apply to the Company's trade secrets independent from this Agreement. Furthermore, nothing herein shall be construed to require withholding information in violation of any applicable state or federal law, or to prohibit the reporting of information where such is protected by law. Furthermore, nothing herein shall be construed as limiting or impeding an employee covered by the National Labor Relations Act (the "Act") from exercising his or her rights under Section 7 of the Act by, for example, disclosing Terms and Conditions Information. "Terms and Conditions Information" refers to information concerning the wages, hours and terms and conditions of employment for employees covered by the Act.

5.      Preservation of Records.  I will preserve records of Company customers, prospects, suppliers, and other business relationships, and will not knowingly use these records to harm the Company's business interests. Upon termination of employment, I will return all such records, and any copies (tangible and intangible) to the Company. I understand that I am only authorized to access and use the Company's computers, email, or related computer systems to pursue matters that are consistent with the Company's business interests. I recognize that access or use of such systems to pursue personal business interests apart from the Company, to compete or to prepare to compete, or to otherwise knowingly undermine the Company's interests (such as, by way of example only, destroying its records or programs) is strictly prohibited and outside the scope of my authorized use of Company's systems.

6.      Notice and Garden Leave.  I will provide the Company with a minimum of thirty-days' advance, written notice of the termination of my employment before I begin working for or allow my name to be associated with any other person or entity other than the Company. During this notice period, I will assist as requested in transitioning the business relationships with customers and other business contacts with which I have material involvement as needed to help the Company retain such business relationships. I further understand that the Company can remove me from active service during this notice period at its discretion, but that doing so will not eliminate my duty to remain loyal to the Company while on the Company's payroll and to otherwise comply with the restrictions in this Agreement.   I understand that I may be held responsible for any damages, direct and consequential, caused by my failure to honor this notice and cooperation obligation.

7.      Customer Non-Interference Obligation.  For a period of six months following the termination of my employment with Company, regardless of who initiates such termination or why, I will not knowingly, directly or indirectly, solicit, divert, accept business from, or take away,

PROTECTIVE COVENANTS AGREEMENT - PAGE 2

or attempt to solicit, divert, accept business from or take away, a customer of the Company that I did business with or supervised business related activities with or regarding which I received Confidential Information in the two year period preceding the termination of my employment (the "**Look Back Period**"), for the purpose of selling or providing a product or service that competes with or displaces a product or service of the Company that I had some material involvement in or received Confidential Information about while employed with the Company. This restriction is understood to be inherently reasonable in its geography because it is limited to the places where said customer(s) do business. This remedy is provided to address a portion of the harm caused by such a violation, but cannot fully address all of the harm caused by the loss of an employee due to a violation of this agreement due to the irreparable nature of the harm it causes. I understand that the foregoing provision precludes me from working directly for a customer covered by the foregoing provision if my employment by such customer would result in the diversion, loss or reduction of the amount of work the Company does for such customer.

8.     <u>Employee Non-Interference Obligation</u>.     For a period of six months following the termination of my employment with Company, regardless of who initiates such termination or why, I will not knowingly solicit or encourage, directly or indirectly, in person or through others, any employee of the Company with whom I worked, as to whom I had supervisory responsibilities, and/or about which I gained knowledge by virtue of my employment during the Look Back Period to terminate his/her relationship with the Company or to alter his/her relationship with the Company to the Company's detriment. This restriction is not intended to prohibit general advertising of employment opportunities published to the general public that are not targeted at the Company's employees through newspaper or similar ads. If I violate this paragraph, in addition to injunctive relief prohibiting further violations, I will pay the Company 25% of the previous 12-month's wages of any employee that the Company loses as a result of, in whole or in part, my violation which shall serve as liquidated damages to cover part of the damages resulting from the loss of the employee. This remedy is provided to address a portion of the harm caused by such a violation, but cannot fully address all of the harm caused by the loss of an employee due to a violation of this agreement due to the irreparable nature of the harm it causes.

9.     <u>Non-Compete Obligation</u>.     For a period of six months following the termination of my employment with Company, regardless of who initiates such termination or why, I will not, as an employee, consultant, contractor, officer, owner, director, or otherwise, participate in, provide, supervise, or manage activities or services on behalf of a Competing Business that are the same as or similar in function or purpose to the services I provided the Company in the Look Back Period or that are otherwise likely or probable to result in the disclosure of Confidential Information. As used herein, "**Competing Business**" means any person or entity engaged in the business of providing underground utilities locating services, or the provision of related goods or services that would displace or compete with the goods and services of the Company. This restriction is limited to the United States and the province of Alberta, Canada, and any other Canadian province in which the Company is providing service at the time of enforcement. This paragraph is not intended to prohibit: (i) employment with an independently operated subsidiary, division, or unit of a diversified corporation so long as the independently operated business unit at issue is truly independent and does not compete in any way with the Company; or, (ii) a passive and non-controlling ownership of less than 2% of the stock in a publicly traded company.

**PROTECTIVE COVENANTS AGREEMENT - PAGE 3**

10.     Intellectual Property Assignment.[2]  All CIIP shall be the Company's exclusive property unless otherwise agreed by both parties in writing.  While employed, and as necessary thereafter, you will assist Company to obtain patents or copyrights on all such CIIP that Company seeks to protect, and will execute all documents and do everything necessary to obtain for Company copyrights, patents, licenses, and other rights and interests that would be necessary to secure for the Company the complete benefit of CIIP.  You hereby assign to Company or its designee all right, title, and interest to all CIIP that you have acquired or do acquire in the future, during employment or association with the Company or its Related Entities.  **Company Inventions and Intellectual Property ("CIIP")"** means all intellectual property: (a) that relates to Company's business, or to any actual or demonstrably anticipated Company research, future work, or projects, whether conceived or developed alone or with others, and whether conceived or developed during regular work hours; or (b) that results from your work performed for Company or performed on Company time or using Company resources.

11.     Severance.  In the event Employee's employment is terminated without Cause, Company shall pay Employee severance equal to Employee's base salary, less applicable withholding and taxes, for a period of six months ("Severance Period").  If, in the Company's exercise of reasonable discretion, you violate any of the provisions contained in Sections 4, 7, 8, and 9 during the Severance Period, Company shall be relieved of any obligation to make further severance payments.  For purposes of this provision, **"Cause"** shall mean conduct, which in the Company's reasonable exercise of discretion, constitutes: violation of this Protective Covenants Agreement; material violation of the Company's policies and procedures (including those policies and procedures set forth in Employee Handbook, which includes, without limitation, commission of those offenses identified as "serious offenses" in Section 2.7(a)(1)-(21) of the disciplinary policy); engaging in workplace violence; disregarding the Company's policies regarding safety in the workplace; gross insubordination; job abandonment; failure to perform your job duties to the Company's reasonable satisfaction; engaging in conduct that casts the Company in a bad light; failing to safeguard Company resources; falsification of Company records and/or other acts of dishonesty or fraud against the company; and stealing from the Company.  A de minimus violation of the Company's policies and procedures will not constitute "Cause" unless it is: (a) a repeated commission of a minor infraction which continues despite counseling to cease the offending conduct; and/or (b) results in the endangerment of the Company's assets or employees.  An offense identified as a "serious offense" under Section 2.7(a)(1)-(21) shall never be considered a "de minimus" violation.

12.     General Terms.  (a) I understand that my post-employment obligations under this Agreement will survive the termination of this Agreement and/or termination of my employment, regardless of the cause of the termination, unless otherwise explicitly agreed in a writing signed by all parties. (b) In the event I violate one of the time-limited restrictions in this Agreement, then the restricted period for such violated restriction shall be extended by one day for each day I have violated the restriction up to a maximum extension equal to the length of the period of forbearance originally bargained for.  (c) The existence of a cause of action by me against Company shall not constitute a defense to enforcement of the restrictions on me contained in this Agreement. (d) If a court finds a restriction herein to be unenforceable as written, the Court will revise the restriction

---

[2] Employees in Illinois, Kansas, Minnesota, North Carolina, and Washington are directed to Exhibit B for important limitations on the scope of this Intellectual Property Assignment Provision.

PROTECTIVE COVENANTS AGREEMENT - PAGE 4

(for the jurisdiction covered by that court only) so as to make it enforceable to protect Company's legitimate business interests. (e) A violation of this Agreement would cause not only actual and compensable damage, but also irreparable harm and continuing injury to the Company, for which there would not be an adequate remedy at law. Accordingly, if I breach or threaten to breach this Agreement, the Company shall be entitled to temporary and permanent injunctive relief in addition to, and not in lieu of, any and all other legal remedies to which it would otherwise be entitled. (f) This Agreement will inure to the benefit of Company's successors and assigns, and may be enforced by any one or more of same, without need of any further agreement from me. (g) As used herein, references to restrictions used to protect the property and interests of the Company will be understood to include protection of the property and interests of any subsidiary, affiliate, or parent of the Company with which I have any material involvement during my employment with the Company. (h) I understand that the Company may elect to provide another party notice of this Agreement and an opinion about its applicability. While I reserve the right to also communicate my disagreement with such an opinion if I disagree, I recognize the Company's legitimate business interest in expressing its opinion and consent to it doing so if it believes such is necessary. I will not assert any claim that such conduct is legally actionable interference or otherwise impermissible regardless of whether or not this Agreement is later found to be enforceable in whole or in part.

13.     The laws of the State of Indiana will control the interpretation and application of this Agreement, without regard to any conflicts of law principles of Indiana or any other state to the contrary. I consent to the personal jurisdiction of courts in Marion County, over me and waive all rights to the contrary; and, the exclusive venue and forum for any legal action in a court of law arising from this Agreement shall be a court of competent jurisdiction located in Marion County, Indiana.

14.     In order to help avoid disputes and related litigation costs, during employment and for a period of six months thereafter, I will give the Company thirty (30) days advance written notice prior to accepting any position with a Competing Business and will engage in an interactive dialogue and exchange of information about the position I am considering accepting if requested to do so. I understand that the purpose of this notice obligation is to help avoid the cost of litigation that might otherwise be necessary to pursue discovery, and to explore negotiated restrictions that would protect the Company's legitimate business interests. Accordingly, if I fail to provide such notice I may be held responsible for costs of litigation and other consequential damages. I acknowledge that my obligations under this paragraph are in addition to the notice requirements under Paragraph 6.

I acknowledge that my employment with the Company is at will, and this Agreement does not constitute a contract for employment. This Agreement shall be considered made on the date signed by me below which shall be the effective date of this Agreement unless entering into this Agreement was or is a condition of my initial employment in which case the terms of this Agreement are understood to be operative upon the inception of my employment (whether reduced to writing on that specific date or not).

PROTECTIVE COVENANTS AGREEMENT - PAGE 5

**EMPLOYEE:**

_(signature)_

Printed Name: _Eric Moody_

Date: _5/22/12_

**UNITED STATES**
**INFRASTRUCTURE CORPORATION**

By: _____

Its: _SVP_

**PROTECTIVE COVENANTS AGREEMENT - PAGE 6**

## EXHIBIT A

### Louisiana:

For a Louisiana resident, for so long as Employee resides in Louisiana and is subject to the laws of Louisiana, this Protective Covenants Agreement is modified as follows:

The enforcement of the restrictions in Sections 7 & 9 will be limited within the state of Louisiana to the Parishes in which Employee assisted Company in providing its products and services, as are indicated by circling below; provided, however, that nothing in Agreement may be construed to prohibit the enforcement of Sections 7 & 9 in accordance with their terms in states outside of Louisiana.

| | | | |
|---|---|---|---|
| Acadia | Allen | Ascension | Assumption |
| Avoyelles | Beauregard | Bienville | Bossier |
| Caddo | Calcasieu | Caldwell | Cameron |
| Catahoula | Claiborne | Concordia | De Soto |
| East Baton Rouge | East Carroll | East Feliciana | Evangeline |
| Franklin | Grant | Iberia | Iberville |
| Jackson | Jefferson | Jefferson Davis | Lafayette |
| Lafourche | La Salle | Lincoln | Livingston |
| Madison | Morehouse | Natchitoches | Orleans |
| Ouachita | Plaquemines | Pointe Coupee | Rapides |
| Red River | Richland | Sabine | St. Bernard |
| St. Charles | St. Helena | St. James | |
| St. John the Baptist | St. Landry | St. Martin | St. Mary |
| St. Tammany | Tangipahoa | Tensas | Terrebonne |
| Union | Vermilion | Vernon | Washington |
| Webster | West Baton Rouge | West Carroll | West Feliciana |
| Winn | | | |

### Nebraska:

For a Nebraska resident, for so long as Employee resides in Nebraska and is subject to the laws of Nebraska, this Protective Covenants Agreement is modified as follows:

Section 7 is limited to Company customers with which you had business dealings in the Look Back Period and excludes any entity who ceased being a customer at least six (6) months prior to your termination (due to no fault of you).

### Wisconsin:

For a Wisconsin resident, for so long as Employee resides in Wisconsin and is subject to the laws of Wisconsin, this Protective Covenants Agreement is modified as follows:

(a) the tolling language in Section 12(b) shall not apply.

**PROTECTIVE COVENANTS AGREEMENT - PAGE 7**

**EXHIBIT B**

**Notice Regarding Invention Assignment**

1.      For an employee residing in Illinois, Kansas, or North Carolina, you are hereby advised:

**Notice.** No provision in this Agreement requires Employee to assign any of his or her rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on Employee's own time, unless (a) the invention relates (i) to the business of the Company or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by Employee for the Company.   Delaware Code Title 19 Section 805; Illinois 765ILCS1060/1-3, "Employees Patent Act"; Kansas Statutes Section 44-130; North Carolina General Statutes Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

2.      For an employee residing in Washington, you are hereby advised:

**Notice.** No provision in this Agreement requires Employee to assign any of his or her rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on Employee's own time, unless (a) the invention relates (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by Employee for the Company.   Washington Rev. Code, Title 49 RCW: Labor Regulations Chapter 49.44.140.

3.      For an employee residing in Minnesota, you are hereby advised:

**Notice.** No provision in this Agreement requires Employee to assign any of his or her rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on Employee's own time, and (a) which does not relate (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by Employee   for   the   Company.      Minnesota   Statutes   13A   Section   181.78.

**PROTECTIVE COVENANTS AGREEMENT - PAGE 8**